UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANEL, INC., | No. C-10-03620 JCS |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS** |
| HUANGTENG WENG, ET AL., | |
| Defendants. | **[Docket No. 32]** |

## I.    INTRODUCTION

In this trademark counterfeiting and  infringement, false designation of origin, and cyberpiracy action, Plaintiff Chanel, Inc. ("Chanel") brings a Motion for Final Default Judgment Against Defendants ("Motion") in which it seeks default judgment, an award of statutory damages, costs and a permanent injunction against Defendants Huangteng Weng (individually and jointly also known as Huang Fei, Binbin Lin, Xiaoteng Wen), Gaochao, and Does 1-10[1] (Weng and Gauchao referred to hereafter as "Defendants").  Pursuant to Pursuant to Local Rule 7-1(b), the Court finds this matter suitable for determination without oral argument.  For the reasons stated below, the Motion should be GRANTED.

---

[1]The DOE Defendants 1-10 should be DISMISSED from the action. "Generally, 'Doe' pleading is improper in federal court." *See Bogan v. Keene Corp.*, 852 F.2d 1238, 1239 (9th Cir.1988). Moreover, there is no provision in the Federal Rules of Civil Procedure that permits the use of fictitious defendants. *Fifty Associates v. Prudential Ins. Co.*, 446 F.2d 1187, 1191 (9th Cir.1970).

United States District Court
For the Northern District of California

II.    **BACKGROUND**

Plaintiff is a New York corporation with its principal place of business located at Nine West 57th Street, New York, New York 10019.  First Amended Complaint ("First Am. Compl.") ¶ 3. Chanel manufactures and distributes a wide range of high quality goods, including handbags, wallets, shoes and boots, sunglasses, jewelry and watches, which are sold throughout the United States and worldwide.  First Am. Compl. ¶ 3; *see also* Declaration of Adrienne Hahn Sisbarro in Support of Plaintiff's Motion for Entry of Final Default Judgment ("Hahn Decl.") ¶¶ 3-6.  Plaintiff owns a number of federally registered trademarks consisting of the word "Chanel" and variations of the monogram "CC" ("Chanel Marks") which are used in connection with the manufacture and distribution of its products.  First Am. Compl. ¶ 10; Hahn Decl. ¶ 4.

Plaintiff filed the Complaint in this action on August 17, 2010, naming Huangteng Weng (also known as Huang Fei Fei, Bai Fiefie, and Dapao Wen), and Does 1-10 as Defendants.[2] Plaintiffs filed a First Amended Complaint on November 16, 2010.  In the First Amended Complaint, Plaintiff alleges that Defendants are individuals and/or business entities residing in the People's Republic of China, and that Defendants have registered, established, or purchased the following nine domain names: brand-sunglasses.net, cheapbagsstore.com, cocchaneloutlet.net, chanel-bag.org, chanel-store.net, chaneloutletstores.net, designerhandbagsoutlets.net, designer-handbags-outlet.com, and discount-handbags-outlet.com.  First Am. Compl.  ¶¶ 3, 8; Schedule "A" (Subject Domain Names) at 12.

In the Motion, Plaintiff lists eight additional domain names allegedly operated by Defendants that Plaintiff discovered after filing the First Amended Complaint: chanelhandbagsoutlets.com, chanel-handbags-store.com, chaneloutlets.net, chaneloutletsstores.net, cocochaneloutlet.com, designerhandbags4u.net, ukdesignerhandbags.net, and uschanel.com.  Motion at 4; Schedule "B" (New Subject Domain Names) at 2.  Plaintiff alleges that Defendants use the seventeen domain names (collectively, "Subject Domain Names") to operate interactive commercial websites which

_____

[2]On November 17, 2010,  Plaintiffs added Defendant Gaochao, and removed the alias "Dapao Wen" from the First Amended Complaint.

advertise and sell counterfeit, infringing products bearing the Chanel Marks.  First Am. Compl. ¶¶ 4, 7-9.

According to Plaintiff, at some point prior to filing the Complaint it received information that Defendants were selling counterfeit products through the Subject Domain Names.  Hahn Decl. ¶ 8. Plaintiff retained private investigator Brandon Scott ("Scott") of Brasco & Associates, LLC, a licensed private investigative firm, to investigate the suspected sales of counterfeit products by Defendants.  *Id.* ¶ 9.  Scott accessed Defendants' interactive website at the domain name cocochaneloutlet.net and purchased a Chanel branded wallet from the site.  Declaration of Brandon Scott in Support of Plaintiff's Motion for Entry of Final Default Judgment ("Scott Decl.") ¶ 4-5. Scott  requested that the purchase be sent to his address in San Jose, California, and received a confirmation of his purchase via email.  Scott Decl. ¶ 5 & Ex. 2 (copies of email confirmations).  On December 13, 2010, Scott received the Chanel branded wallet and sent it together with the Chain of Evidence to representatives of Chanel for evaluation.  *Id.* ¶ 6.  Hahn is the Director of Legal Administration for Chanel and is responsible for Chanel's trademark and anti-counterfeiting efforts in the United States.  Hahn Decl. ¶ 3.  As a result, Hahn is familiar with the manufacture, sale, and distribution of genuine Chanel products and has been trained to identify the distinctions between genuine Chanel merchandise and counterfeit copies of Chanel merchandise.  *Id.*  Hahn personally inspected the wallet Scott purchased and determined that it was a non-genuine Chanel branded product.  *Id.* ¶ 10.

In February and March of 2011, Stephen M. Gaffigan, counsel for Plaintiff, accessed the websites operating under the Subject Domain Names cocochaneloutlet.net and discount-handbags-outlet.com and observed that the websites operating under these domain names continue to offer for sale Chanel branded products.  Declaration of Stephen M. Gaffigan in Support of Plaintiff's Motion for Entry of Final Default Judgment ("Gaffigan Default J. Decl.") ¶ 4.  A representative from Gaffigan's firm downloaded printouts from each of the applicable websites, and provided printouts of these pages to Hahn, who inspected the products offered for sale bearing the Chanel Marks and determined that the products were non-genuine Chanel products.  *Id.* ¶ 5 & Ex. 3 and 4; Hahn Decl. ¶¶ 12-13.  Anne E. Kearns, counsel for Plaintiff, accessed the websites operating under the new

3

**United States District Court**
For the Northern District of California

1   Subject Domain Names: chanelhandbagsoutlets.com, chaneloutlets.net, chaneloutletsstores.net, and

2   ukdesignerhandbags.net and was able to browse the online stores for products bearing Chanel's

3   trademarks, add products to the online shopping carts, proceed to a point of checkout, and otherwise

4   actively exchange data with the websites.  Declaration of Anne K. Kearns in Support of Plaintiff's

5   Motion for Entry of Final Default Judgment ("Kearns Decl".) ¶¶ 1-2.  Plaintiff alleges that all of the

6   websites operated at the Subject Domain Names offer for sale products bearing counterfeits of the

7   Chanel Marks.  *See* Declaration of Stephen M. Gaffigan in Support of Plaintiff's Ex Parte

8   Application for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal

9   Rule of Civil Procedure 4(f)(3) ("Gaffigan Alternate Service Decl."), Ex. 2 (printouts from the

10  Subject Domain Names listed in the Complaint showing products bearing the Chanel Marks); *see*

11  *also* Gaffigan Default J. Decl., Ex. 2 & 3 (printouts from Subject Domain Names listed in the

12  Motion showing products bearing the Chanel Marks).  Further, Plaintiff asserts that Defendants have

13  infringed each of the twenty-one Chanel Marks.  *See* Hahn Decl. ¶ 15 (list citing examples of

14  Defendants' infringement of each registered mark).

15         According to the First Amended Complaint, Defendants "are the  moving and conscious

16  force" behind the websites operated at the Subject Domain Names, and Defendants also own and

17  operate additional websites under domain names unknown to Plaintiff which promote and offer for

18  sale counterfeit, infringing goods.  First Am. Compl. ¶¶ 5, 7, 9.  Plaintiff alleges that Defendants'

19  websites offer for sale counterfeit goods using the Chanel Marks that are of a substantially different

20  quality than Plaintiff's genuine goods.  Compl. ¶ 19.  Plaintiff further alleges that Defendants are

21  selling the counterfeit goods with the knowledge that such goods will be mistaken for the genuine

22  products offered for sale by Plaintiff.  *Id.*  As a result, Plaintiff claims that Defendants' infringing

23  activities are likely to cause confusion and mistake in the minds of consumers by creating a false

24  impression that Defendants' counterfeit goods are genuine goods originating from and approved by

25  Chanel.  *Id.* ¶ 19.  Plaintiff asserts that it is suffering irreparable injury and damages as a result of

26  Defendants' counterfeiting and infringing activities.  *Id.* ¶ 26.  Plaintiff alleges that Defendants

27  conduct business with the State of California and within this judicial district through the operation of

28  "fully interactive commercial websites" at the Subject Domain Names, and further allege that

4

United States District Court

For the Northern District of California

"Defendants have conspired with each other to jointly engage in the promotion, offering for sale and sale of goods using infringements and counterfeits of the Chanel Marks" within this district. *Id.* ¶ 4, 7. Plaintiff also notes that the registry for the .com and .net Subject Domain Names, VeriSign Global Registry Services, is located within this district. *Id.* ¶ 7.

The Chanel Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality goods for "an extended period of time" and Plaintiff has invested substantial time, money, and other resources developing and promoting the Chanel Marks. *Id.* ¶¶ 11, 13. Plaintiff asserts that the consuming public readily identifies merchandise bearing the Chanel Marks as high quality luxury goods sponsored and approved by Plaintiff, and that the Chanel Marks qualify as famous marks under 15 U.S.C. § 1125(c)(1). *Id.* ¶¶ 13-15. The Chanel Marks have never been assigned or licensed to any of Defendants nor have they been abandoned, and Plaintiff alleges that Defendants have, at all relevant times, had full knowledge of Plaintiff's ownership of and exclusive right to use and license the Chanel Marks. *Id.* ¶¶ 11, 12, 17.

The summonses and Complaint were served on Defendants via email on December 7, 2010, pursuant to Plaintiff's Ex Parte Application for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3).[3] Defendants failed to file a responsive pleading or otherwise appear in this action. The Court entered default under Fed. R. Civ. P. 55(a) against Defendants on January 3, 2011, and Plaintiff now brings a motion for entry of default judgment pursuant to Fed. R. Civ. P. 55(b).

Plaintiff asserts three claims against Defendants: (1) trademark counterfeiting and infringement under 15 U.S.C. § 1114, (2) false designation of origin under 15 U.S.C. § 1125(a), and (3) cyber piracy under 15 U.S.C. § 1125(d). First Am. Compl. ¶¶ 29-49. Plaintiff seeks an injunction prohibiting Defendants from infringing Plaintiff's trademarks and an order requiring the Subject Domain Names to be transferred to Plaintiff and/or disabled. *Id.* ¶ 50; Motion at 21-22.

---

[3]Plaintiff filed its "Ex Parte Application for Order Authorizing Alternate Service of Process" on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) on December 1, 2010. In the Application, Plaintiff requested an order allowing service of process via electronic mail pursuant to Rule 4(f)(3) because it was unable to locate Defendants or serve them in any other manner. On December 6, 2010, this Court issued an Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3).

1    Plaintiff also seeks statutory damages totaling $696,000.00, an award of $700.00 in costs, and an

2    award of prejudgment interest.  First Am. Compl. ¶ 50; Motion at 22.

3    **III.    ANALYSIS**

4         **A.    Personal Jurisdiction**

5         As a preliminary matter, this Court must determine whether or not it has personal jurisdiction

6    over Defendants who are alleged to reside and/or conduct substantial business in the People's

7    Republic of China.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (holding that the court properly

8    raised sua sponte the question of whether there was personal jurisdiction over Iraq before

9    determining whether default judgment should be entered).  In *Tuli*, the Ninth Circuit explained that

10   where a plaintiff seeks default judgment, the court may not assume the existence of personal

11   jurisdiction, even though ordinarily personal jurisdiction is a defense that may be waived, because a

12   judgment in the absence of personal jurisdiction is void.  *Id.*  Where there are questions about the

13   existence of personal jurisdiction in a default situation, the court should give the plaintiff the

14   opportunity to establish the existence of personal jurisdiction.  *Id.*

15        Under California's long-arm statute, Cal. Code Civ. Proc. § 410.10, federal courts in

16   California may exercise jurisdiction to the extent permitted by the Due Process Clause of the

17   Constitution.  *Panavision v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  The Due Process Clause

18   allows federal courts to exercise jurisdiction where either: 1) the defendant has had continuous and

19   systematic contacts with the state sufficient to subject him or her to the general jurisdiction of the

20   court; or 2) the defendant has had sufficient minimum contacts with the forum to subject him or her

21   to the specific jurisdiction of the court.  *Id.* at 1320.  Courts apply a three-part test in determining

22   whether specific jurisdiction exists:

23        (1) The nonresident defendant must do some act or consummate some transaction
          with the forum or perform some act by which he purposefully avails himself of the
24        privilege of conducting activities in the forum, thereby invoking the benefits and
          protections of its laws; (2) the claim must be one which arises out of or results from
25        the defendant's forum-related activities; and (3) exercise of jurisdiction must be
          reasonable.

26

27   *Id.* at 1320 (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)

28   (quotation marks omitted)).  As discussed below, the factual allegations and evidence support a

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

finding of specific jurisdiction over Defendants.[4]

### 1.     Purposeful Availment

In order to satisfy the first prong of the test for specific jurisdiction, a defendant must have either purposefully availed itself of the privilege of conducting business activities within the forum or purposefully directed activities toward the forum. *Id.* Purposeful availment typically consists of action taking place in the forum that invokes the benefits and protections of the laws of the forum, such as executing or performing a contract within the forum. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). To show purposeful availment, a plaintiff must show that the defendant "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).

"In the internet context, the Ninth Circuit utilizes a sliding scale analysis under which 'passive' websites do not create sufficient contacts to establish purposeful availment, whereas interactive websites may create sufficient contacts, depending on how interactive the website is." *Jeske v. Fenmore*, 2008 WL 5101808, *4 (C.D. Cal. Dec. 1, 2008) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008)). "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Personal jurisdiction is appropriate where an entity is conducting business over the internet and has offered for sale and sold its products to forum residents. *See Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1077-78 (C.D. Cal. 1999) (holding that the exercise of personal jurisdiction was appropriate based on the "highly commercial" nature of defendant's website); *see also Allstar*

---

[4]Because Plaintiff has not pointed to facts indicating that Defendants' contacts with California are continuous and systematic, and because this Court concludes that specific jurisdiction exists, the Court need not reach the question of whether it has general jurisdiction over Defendants. The Court notes, however, that the standard for establishing general jurisdiction is high, requiring that a defendant's contacts approximate physical presence. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Based on the facts alleged in the Complaint, it does not appear that this standard is met.

*Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 1109, 1122 (C.D. Cal. 2009) (holding that the exercise of personal jurisdiction was appropriate because "by operating a highly commercial website through which regular sales of allegedly infringing products are made to customers in [the forum state], [the defendants] have purposefully availed themselves of the benefits of doing business in this district").

Here, the allegations and evidence presented by Plaintiff in support of the Motion are sufficient to show purposeful availment. Plaintiff has alleged that Defendants are "jointly operating fully interactive commercial websites selling goods bearing counterfeits of Plaintiff's world famous trademarks" and that they "advertise and offer to sell goods directly to California residents" including those "in this Judicial District." Motion at 6 *citing* Compl. ¶ 7. In addition, Plaintiff has provided evidence in support of these allegations. *See* Gaffigan Default J. Decl., Ex. 1 & Gaffigan Alternate Service Decl., Ex. 2 (printouts from each of the Subject Domain Names showing products bearing the Chanel Marks). Defendants' fully interactive websites, used to advertise and sell infringing products, constitute affirmative conduct promoting the transaction of business with California. *See Gray & Co.*, 913 F.2d at 770. Such commercial activity in the forum amounts to purposeful availment of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws. *Schwarzenegger*, 374 F.3d at 802 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Accordingly, the Court concludes that Defendants' contacts with California are sufficient to show purposeful availment.

### 2.      Claim Arises out of Forum-Related Activities

The second prong of the test for specific jurisdiction requires that the claim be one that arises out of or relates to the defendant's activities in the forum. *Panavision*, 141 F.3d at 1320. This requires a showing of "but for" causation. *Id.* at 1322 ("We must determine if the plaintiff Panavision would not have been injured 'but for' the defendant Toeppen's conduct directed toward Panavision in California.").

Here, Defendants' contacts with the forum are their sales of infringing and counterfeit products to customers in this state; but for Defendants' infringing activity, Plaintiff would not have been injured. *See id.* (finding "but for" causation to be met because but for defendant's infringing

1    activity, the injury to plaintiff would not have occurred).  Accordingly, the Court concludes that the

2    second requirement for specific jurisdiction is satisfied.

3              **3.        Reasonableness of Exercise of Jurisdiction**

4          The third prong of the test for specific jurisdiction provides that the exercise of jurisdiction

5    must comport with fair play and substantial justice.  *Id.* at 1320.  To determine whether the exercise

6    of jurisdiction over a non-resident defendant comports with fair play and substantial justice, a court

7    must consider seven factors:

8              (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the
               burden on the defendants of defending in the forum; (3) the extent of conflict with the
9              sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute;
               (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum
10             to the plaintiff's interest in convenient and effective relief; and (7) the existence of an
               alternative forum.

11

12   *Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  There is a presumption

13   that the exercise of jurisdiction is reasonable when the first two prongs of the specific jurisdiction

14   test have been met, and the burden is on the defendant to establish unreasonableness.  *See*

15   *Schwarzenegger*, 374 F.3d at 802 (stating that after the plaintiff meets his burden to satisfy the first

16   two prongs, the burden then shifts to the defendant to present a "compelling case" that jurisdiction is

17   unreasonable).  The reasonableness factors enumerated in *Core-Vent* weigh in favor of finding that

18   the exercise of jurisdiction comports with fair play and substantial justice in this case.

19         First, the forum state has a strong interest in adjudicating the dispute.  Although none of the

20   parties is a California citizen, Plaintiff operates retail establishments in this forum, claims to have

21   suffered damage as a result of Defendants' infringing activities in this forum, and alleges that

22   Defendants advertise and sell the infringing products to California citizens.  *See Nissan Motor Co.*

23   *Ltd. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1161 (C.D. Cal. 2000) ("California has a strong

24   interest in protecting its citizens from trademark infringement and consumer confusion.").  This

25   factor thus favors a finding that the exercise of jurisdiction is reasonable.

26         Second, the extent of Defendants' purposeful interjection into the forum state's affairs is

27   unknown, as Plaintiff has not alleged or presented evidence of the amount of infringing products

28   Defendants sell to California customers, therefore this factor is neutral.

9

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

Third, the burden on Defendants, as residents of China, to litigate in California is significant, but the inconvenience is not so great as to deprive them of due process, particularly given Defendants' purposeful availment of the benefits of conducting business within the forum. *See Panavision*, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'").

Fourth, consideration of the most efficient judicial resolution is "no longer weighed heavily given the modern advances in communication and transportation," therefore this factor is also neutral because there may be witnesses and evidence located in both California and China. *Id.*

Fifth, with respect to the existence of an alternative forum, Defendants have not come forward to request an alternative forum, and the Court is unaware of whether there is such a forum. This factor is neutral.

Sixth, with respect to the importance of the forum to the plaintiff's interest in convenient and effective relief, courts generally give little weight to the plaintiff's inconvenience. *See id.* However, if a forum is available in China, it would be costly and inconvenient for Plaintiff to litigate in China. Therefore this factor weighs slightly in Plaintiff's favor.

Finally, regarding the extent to which the exercise of jurisdiction would conflict with the sovereignty of Defendants' state, "[l]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003) (quoting *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988)). While this factor weighs in favor of Defendants, it is not sufficient to defeat the Court's exercise of personal jurisdiction where the other *Core-Vent* factors support a finding of personal jurisdiction.

Balancing these seven factors, the Court concludes that the exercise of jurisdiction over Defendants is reasonable in this case.

**B.      Legal Standard Regarding Entry of Default Judgment**

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based

upon failure to plead or otherwise defend the action.  Fed. R. Civ. P. 55(b).  A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment.  *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  The district court has discretion in its decision to grant or deny relief upon an application for default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980);  *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956) (affirming district court's denial of default judgment).  The court may consider the following factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d).  On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered.  *Id.*

Damages or other forms of relief awarded are constrained by the rule that judgment by default "must not be different in kind from, or exceed in amount, what is demanded  in the [complaint]."  Fed. R. Civ. P. 54(c).

## C.   *Eitel* Factors

### 1.   Possibility of Prejudice to Plaintiff

To the extent that Defendants have failed to appear in and otherwise defend this action, Plaintiff will be left without a remedy if default judgment is not entered in its favor.  This factor therefore favors entry of default judgment.

**United States District Court**
For the Northern District of California

2.       **Excusable Neglect**

There is no evidence in the record that Defendants' failure to appear and otherwise defend was the result of excusable neglect.  Rather, Defendants failed to appear after being served with the Complaint in this action, indicating that their failure to appear was willful.  *See* Docket Nos. 20, 21 (Defendants served on December 7, 2010).  This factor favors entry of default judgment.

3.       **Allegations and Substantive Merits of Claims**

i)       **Trademark Counterfeiting & Infringement**

To prevail on a claim of trademark infringement, a holder of a registered service mark must show that another person is using: (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.  15 U.S.C. § 1114(1)(a); *Century 21 Real Estate Corp. v. Sanlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).  Neither intent nor actual confusion are necessary to establish a likelihood of confusion.  *Id.*  The critical determination is "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes that product."  *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (quoting *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003)) (quotation marks omitted).

Here, Plaintiff has alleged that it is the owner of the Chanel Marks that are registered with the United States Patent and Trademark Office, that Defendants use the marks to sell counterfeit products bearing the Chanel Marks over the internet, and that these activities are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' counterfeit goods.  Plaintiff has also submitted evidence that the two Defendants named in the First Amended Complaint are the registered owners of the domain names at issue in this litigation.  *See* Gaffigan Decl., ¶¶ 3-6.  In addition, Plaintiff presented the trademark registrations for the Chanel Marks in support of the motion.  *See* RJN, Ex. A.  These allegations and evidence are sufficient to establish that Defendants infringed upon the twenty-one Chanel Marks listed in Exhibit A to Plaintiff's RJN.  Accordingly, the Court concludes that Plaintiff is entitled to default judgment on its trademark infringement claim.

United States District Court

For the Northern District of California

ii)        **False Designation of Origin**

Plaintiff alleges that Defendants' use of the Chanel Marks constitute false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  That section provides as follows:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

In order to prevail in an action for false designation of origin, a plaintiff must show that: 1) the terms or logos in question are valid and protectable trademarks; 2) the plaintiff owns these marks as trademarks; 3) the plaintiff used these marks in commerce; and 4) the defendants "used terms or designs similar to plaintiff's marks without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary purchasers as to the source of the goods." *See Chimney Safety Inst. of Am. v. Chimney King*, 2004 WL 1465699, *2 (N.D. Cal. May 27, 2004) (citing *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046-47 n.8 (9th Cir. 1999)).

Plaintiff has presented evidence satisfying all of the elements listed above with respect to the twenty-one registered Chanel Marks listed in the RJN.  First, Plaintiff has presented evidence that it owns the twenty-one Chanel Marks, thus satisfying the first two elements.  *See* Hahn Decl. ¶ 4; RJN, Ex. A (trademark registrations for Chanel Marks).  Second, Plaintiff has presented evidence that it uses the mark in commerce.  Third, Defendants' use of the Chanel Marks in counterfeit products sold through their website creates a likelihood of confusion.  *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogation in part on other grounds recognized by Mattel, Inc. v.*

13

*Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003).  Therefore, the Court concludes

Plaintiff is entitled to default judgment on its false designation of origin claim.

### iii) Cyberpiracy

Plaintiff's Complaint sets forth a cause of action for cyberpiracy under the

Anticybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. § 1125(d).[5]  To prevail under 15

U.S.C. § 1125(d), Plaintiff must demonstrate that Defendants:  (1) registered, used, or trafficked in a

domain name that; (2) is identical or confusingly similar to a distinctive or famous trademark; with

(3) bad faith intent to profit from the trademark.  *Verizon California Inc. v. OnlineNIC Inc.*, C 08-

2832, 2008 WL 5352022, at *2 (N.D. Cal. Dec. 19, 2008); *see also* 15 U.S.C. § 1125(d).

Registration of a mark is prima facie evidence that the mark is distinctive and thus this element is

satisfied.  *See* 15 U.S.C. § 1057(b); *see also Two Pesos Inc. v. Taco Cabana, Inc*., 505 U.S. 763,

768-69, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

In determining whether there is a likelihood of confusion under the ACPA, courts compare

the plaintiff's mark with the name of the website.  *Coca-Cola Co. v. Purdy,* 382 F.3d 774, 782 (8th

Cir.2004) (holding that there was a likelihood of confusion under the ACPA where defendant had

registered websites including www. my-washington post.com, www. mymcdonalds.com and www.

drinkcoke.org); *see also Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F.Supp.2d 567 (E.D.

Pa.2002) (holding that plaintiff owning Louis Vuitton mark was entitled to default judgment on

ACPA claim based on defendant's use of domain name www. Louis Vuitton- replicas.com).

---

[5]The Act states:
A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
(ii) registers, traffics in, or uses a domain name that-
    (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
    (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
    (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    A court should not look beyond the domain name to consider the content of the website.

2    *Purdy*, 382 F.3d at 783.  "The inquiry under the ACPA is thus narrower than the traditional

3    multifactor likelihood of confusion test for trademark infringement." *Id.*  Consequently, even if it

4    might be evident from the content of the website that it is not sponsored by or affiliated with the

5    plaintiff, there may nonetheless be a violation of the ACPA. *Id.*; *see also People for Ethical*

6    *Treatment of Animals v. Doughney*, 263 F.3d 359 (4th Cir.2001) (holding that domain name www.

7    peta.org violated the ACPA because it was identical to the mark of the plaintiff, People for the

8    Ethical Treatment of Animals, even though a visit to the site itself revealed that it was a parody and

9    that the initials "peta" stood for People Eating Tasty Animals).

10    On the other hand, if the name of the website at issue itself makes clear that it is not affiliated

11    with the plaintiff's mark, there can be no likelihood of confusion.  *See, e.g., The Taubman Co. v.*

12    *Webfeats*, 319 F.3d 770, 777 (6th Cir.2003) (holding that there was no likelihood of confusion on

13    part of plaintiff who owned Taubman mark where defendant operated website with domain name

14    www.taubmansucks. com); *Bally Total Fitness Holding Corp. v. Faber*, 29 F.Supp.2d 1161

15    (C.D.Cal.1998) (holding there was no likelihood of confusion on part of plaintiff owning Bally mark

16    where defendant operated website with domain name www.ballysucks.com).

17    As detailed above, Plaintiff has alleged and provided evidence that it owns its Marks and that

18    they are distinctive.  RJN, Exh. A.  Plaintiff has also alleged and provided evidence that Defendants

19    have registered domain names that are confusingly similar to the Plaintiff's Marks.  *See*

20    *BroadBridge Media, L.L.C. v. Hypercd.com,* 106 F.Supp.2d 505, 510 (S.D.N.Y. 2000) (holding that

21    domain name "hypercd.com" was confusingly similar, if not identical, to mark "HyperCD").

22    Finally, Plaintiff has provided evidence that is sufficient to establish bad faith intent to profit from

23    the mark.  *See id.*; 15 U.S.C. § 1125(d)(1)(B) (listing factors that may be considered in determining

24    whether there is a bad faith intent to profit).  Specifically, Plaintiff has submitted evidence that the

25    Defendants' webpages acknowledge Plaintiff's trademark rights by stating that the products they sell

26    are "replica" "knockoff" and "imitation."  Gaffigan Decl. in Support of Plaintiffs' *Ex Parte* App.,

27    Composite Ex. 1; *see also Rolex Watch USA, Inc. v. Jones*, No. 99-CIV-2359, 2000 WL 1528263, at

28    *3 (S.D. N.Y. Oct. 13, 2000) ("bad faith is manifest" when goods are identified as replicas).

United States District Court

For the Northern District of California

1   Accordingly, the allegations and evidence support entry of default judgment in favor of Plaintiff on

2   its cyberpiracy claim.

3          **4.      Conclusion**

4          Based on consideration of the factors discussed above, it is recommended that default

5   judgment be entered against Defendants on Plaintiff's trademark infringement, false designation of

6   origin and cyberpiracy claims.

7   **D.     Remedies**

8          **1.      Injunctive Relief**

9          Plaintiff requests that the Court grant a permanent injunction barring Defendants from further

10  interfering with Plaintiff's business.  In particular, Plaintiff requests entry of the following

11  injunction[6]:

12      Defendants and their respective officers, agents, servants, employees and attorneys, and all
        persons in active concert and participation with [them] are hereby restrained and enjoined
13      from:

14      (a) manufacturing or causing to be manufactured, importing, advertising, or promoting,
        distributing, selling or offering to sell counterfeit and infringing goods using the Chanel
15      Marks identified in Paragraph 10 of the First Amended Complaint;

16      (b) using the Chanel Marks in connection with the sale of any unauthorized goods;

17      (c) using any logo, and/or layout which may be calculated to falsely advertise the services or
        products of Defendants, brand-sunglasses.net, cheapbagsstore.com, cocochaneloutlet.net,
18      chanel-bag.org, chanel-store.net, chaneloutletstores.net, designerhandbagsoutlets.net,
        designer-handbags-outlet.com, discount-handbags-outlet.com, chanelhandbagsoutlets.com,
19      chanel-hangbags-store.com, chaneloutlets.net, chaneloutletsstores.net, cocochaneloutlet.com,
        designerhandbags4u.net, ukdesignerhandbags.net, uschanel.com, and/or any other website or
20      business, as being sponsored by, authorized by, endorsed by, or in any way associated with
        Chanel;

21
        (d) falsely representing themselves as being connected with Plaintiff, through sponsorship or
22      association.

23      (e) engaging in any act which is likely to falsely cause members of the trade and/or of the
        purchasing public to believe any goods or services of Defendants, brand-sunglasses.net,
24      cheapbagsstore.com, cocochaneloutlet.net, chanel-bag.org, chanel-store.net,
        chaneloutletstores.net, designerhandbagsoutlets.net, designer-handbags-outlet.com,
25      discount-handbags-outlet.com, chanelhandbagsoutlets.com, chanel-hangbags-store.com,
        chaneloutlets.net, chaneloutletsstores.net, cocochaneloutlet.com, designerhandbags4u.net,

26

27      ───────────────
            [6]The language of the injunctive relief is taken from the Plaintiff's proposed order with the
28  following modification: for clarity, the Court has inserted the names of each domain name listed in
    Schedule "A" in lieu of the term "Subject Domain Names."

United States District Court
For the Northern District of California

ukdesignerhandbags.net, uschanel.com, and/or any other website or business, are in any way endorsed by, approved by, and/or associated with Chanel;

(f) using any reproduction, counterfeit, copy, or colorable imitation of the Chanel Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants, via brand-sunglasses.net, cheapbagsstore.com, cocochaneloutlet.net, chanel-bag.org, chanel-store.net, chaneloutletstores.net, designerhandbagsoutlets.net, designer-handbags-outlet.com, discount-handbags-outlet.com, chanelhandbagsoutlets.com, chanel-hangbags-store.com, chaneloutlets.net, chaneloutletsstores.net, cocochaneloutlet.com, designerhandbags4u.net, ukdesignerhandbags.net, uschanel.com, and/or any other website or business, including, without limitation, handbags, wallets, shoes, boots, sunglasses, watches and jewelry;

(g) affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods by Defendants, via brand-sunglasses.net, cheapbagsstore.com, cocochaneloutlet.net, chanel-bag.org, chanel-store.net, chaneloutletstores.net, designerhandbagsoutlets.net, designer-handbags-outlet.com, discount-handbags-outlet.com, chanelhandbagsoutlets.com, chanel-hangbags-store.com, chaneloutlets.net, chaneloutletsstores.net, cocochaneloutlet.com, designerhandbags4u.net, ukdesignerhandbags.net, uschanel.com and/or any other website or business, as being those of Chanel or in any way endorsed by Chanel;

(h) otherwise unfairly competing with Chanel; and

(i) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

Proposed Permanent Injunction at 1-3. Plaintiff also requests that the Court order that the domain names brand-sunglasses.net, cheapbagsstore.com, cocochaneloutlet.net, chanel-bag.org, chanel-store.net, chaneloutletstores.net, designerhandbagsoutlets.net, designer-handbags-outlet.com, discount-handbags-outlet.com, chanelhandbagsoutlets.com, chanel-hangbags-store.com, chaneloutlets.net, chaneloutletsstores.net, cocochaneloutlet.com, designerhandbags4u.net, ukdesignerhandbags.net, uschanel.com, be transferred to Plaintiff. Proposed Default Judgment at 3.

Injunctive relief is available to prevent future trademark infringement under the Lanham Act. 15 U.S.C. § 1116. "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21*, 846 F.2d at 1180. In order to obtain injunctive relief, a plaintiff must show either: (1) probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions on the merits and the balance of hardships tipping in its favor. *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989). In an action for trademark

17

United States District Court

For the Northern District of California

1    infringement, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that

2    the plaintiff will suffer irreparable harm if injunctive relief is not granted." *Id.*

3          Here, Plaintiff has provided evidence of Defendants' infringing activity, thereby showing a

4    probability of success on the merits.  Plaintiff has also established the likelihood of confusion by

5    showing Defendants' use of counterfeit Chanel Marks, giving rise to a presumption that Plaintiff

6    will suffer irreparable harm if injunctive relief is not granted.  Further, Plaintiff asserts that it has

7    invested substantial time and money in advertising and promoting the Chanel Marks, as a result of

8    which Plaintiff's marks have become widely recognized and Plaintiff has developed reputation and

9    goodwill.  *See Phillip Morris USA, Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004)

10   (considering plaintiff's investment in advertising and promoting, reputation, and goodwill in finding

11   irreparable harm).  Because Plaintiff will suffer irreparable injury to its reputation and goodwill if

12   injunctive relief is not granted, the Court recommends that Plaintiff's request for a permanent

13   injunction be granted.

14         Having determined that Plaintiff is entitled to injunctive relief, the Court must determine the

15   appropriate scope of the injunctive relief.  Rule 65 of the Federal Rules of Civil Procedure requires

16   that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be

17   specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained."

18   Fed. R. Civ. P. 65(d).  Generally, "an injunction must be narrowly tailored to remedy only the

19   specific harms shown by the plaintiffs rather than to enjoin all possible breaches of the law." *Iconix,*

20   *Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998-1002 (N.D. Cal. 2006) (citing *Price v. City of Stockton*,

21   390 F.3d 1105, 1117 (9th Cir. 2004).

22         Plaintiff requests that the Court grant an injunction prohibiting Defendants from:

23   manufacturing, distributing, or selling counterfeit goods; making unauthorized use of the Chanel

24   Marks; falsely advertising or representing products or services as associated with or endorsed by

25   Plaintiff; using any counterfeit or imitation of the Chanel Marks; offering any such infringing goods

26   in commerce; unfairly competing with Plaintiff; concealing or destroying unauthorized products or

27   records relating to infringement of the Chanel Marks; and attempting to avoid the prohibitions of the

28   injunction through assignment, transfer, or forming new entities.  The Court finds the requested

United States District Court

For the Northern District of California

1  relief narrowly tailored to remedy the harms shown by Plaintiff and necessary to effectuate the

2  purpose of preventing Defendants from unlawfully infringing on Plaintiff's marks.  Further, the

3  requested relief is in line with injunctive relief granted by other courts.  S*ee, e.g., Chanel, Inc. v.*

4  *Sophia Zhang*, Case No. 3:09-cv-01977-MMC (N.D. Cal. Dec. 7, 2009) (including identical

5  language in permanent injunction).  Accordingly, the Court recommends that Plaintiff's proposed

6  injunction be adopted in its entirety.

7          The Court also finds Plaintiff's request for an order requiring Defendants to transfer the

8  Subject Domain Names to Plaintiff in order to effectuate the purpose of the injunctive relief

9  reasonable.  Plaintiff has provided evidence showing Defendants are tied to all of the Subject

10  Domain Names and that all of the Subject Domain Names sell counterfeit goods.

11          Finally, the Court should grant Chanel's request that the top level domain (TLD) Registries

12  for the Subject Domain Names be required to place the Subject Domain Names on Registry Hold

13  status, thus removing them from the TLD zone files maintained by the Registries that link the

14  Subject Domain Names to the IP address where the associated websites are hosted.  This Court has

15  specifically addressed the issue of enforcing its order on a third party in the context of similar

16  trademark infringement actions and has concluded that under 15 U.S.C. § 116, the Court is

17  authorized issue such an order against a third party because it is necessary to effectuate the purposes

18  of the injunction in this case.  *See e.g.*, *Chanel v. Lin*, 2010 WL 2557503, at *12 (N.D. Cal. May 7,

19  2010); *see also Louis Vuitton Malletier, S.A. v. Absolutee Corp., Ltd.*, Case No. 3:09-cv-05612

20  MMC (N.D. Cal. April 19, 2010) (ordering transfer of domain names on default judgment where

21  plaintiff asserted claims for trademark infringement and false designation of origin under Lanham

22  Act but did not assert cyberpiracy claim).

23                          **2.          Statutory Damages**

24                          **i.          Damages Under The Lanham Act**

25          The Lanham Act provides that a trademark owner may recover: (1) defendant's profits, (2)

26  any damages sustained by the plaintiff, and (3) the costs of the action where a plaintiff has

27  established trademark infringement.  15 U.S.C. § 1117(a).  As an alternative to seeking damages in

28  the form of lost profits, a plaintiff may elect to receive an award of statutory damages in trademark

United States District Court

For the Northern District of California

1    actions involving the use of a counterfeit mark.  15 U.S.C. § 1117(c).  Under the Lanham Act, a

2    court may award "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods

3    or services sold, offered for sale, or distributed, as the court considers just."  *Id.* § 1117(c)(1).  A

4    court may grant enhanced damages of up to $2,000,000 per counterfeit mark on a finding of willful

5    infringement.  *Id.* § 1117(c)(2).  Willful infringement occurs when the defendant knowingly and

6    intentionally infringes on a trademark.  *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d

7    1210, 1216-17 (9th Cir. 2003).  Willfulness can also be inferred from a defendant's failure to defend.

8    *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).  If

9    statutory damages are elected, a court has wide discretion in determining the amount of statutory

10   damages to be awarded.  *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham*, 259

11   F.3d 1186, 1194 (9th Cir. 2001).

12          Here, Chanel requests an award of $4,000.00 per type of goods sold (totaling seven -

13   handbags, wallets, shoes, boots, sunglasses, watches and jewelry), per distinct registered Chanel

14   Mark (seven marks[7]) for a total award of $196,000.00.  Motion at 17.  Plaintiff argues that its request

15   is at the low end of the range prescribed under 15 U.S.C. § 1117(c)(2) and reflects Defendants'

16   extensive and willful counterfeiting.  Plaintiff alleges that Defendants have knowingly sold or

17   offered for sale goods bearing marks that are identical to the Chanel Marks with the intent to

18   capitalize on the reputation and goodwill of the marks, and Plaintiff has provided evidence of the

19   infringement of each of its marks.  *See* Supplemental Gaffigan Decl., Ex. 1.  Additionally,

20   Defendants have failed to appear or defend this action.  Defendants' infringement is therefore willful

21   and the Court finds Plaintiff's request for an award of $196,000.00 to be reasonable.  *See Chanel,*

22   *Inc. v. Doan*,  2007 WL 781976, at *6 (N.D. Cal. Mar. 13, 2007) (awarding $127,701.00 in statutory

23   damages for willful infringement of six federally registered trademarks); *Adobe Systems Inc. v.*

24   *Kern*, 2009 WL 5218005, at *9 (N.D. Cal. Nov. 24, 2009) (awarding $250,000 in statutory damages

25   for willful infringement of five federally registered trademarks); *Adobe Systems, Inc. v. Taveira*,

26   _____

27          [7]Plaintiff states in its Motion that the "only available evidence in this case demonstrates that the
     Defendants distributed, advertised, offered for sale, and/or sold seven (7) types of good, specifically,

28   handbags, wallets, shoes, boots, sunglasses, watches, and jewelry, bearing marks which were in fact
     counterfeits of (7) distinct trademarks for such goods. Motion at 17.

2009 WL 506861, at *6 (N.D. Cal. Feb. 27, 2009) (awarding $250,000 in statutory damages for willful infringement of five federally registered trademarks).  Accordingly, this Court recommends entry of a monetary judgment in favor of Plaintiff in the amount of $196,000.00 in statutory damages based on Defendants' trademark infringement.

### ii.    Damages for Cyberpiracy

Chanel's Complaint sets forth a claim for cyberpiracy pursuant to the Anticybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. § 1125(d).  The evidence before the Court demonstrates that the requirements of the ACPA have been satisfied.  Plaintiff seeks statutory damages pursuant to 15 U.S.C. § 1125(d) in the amount of $500,000.  Because the Court recommends providing statutory damages for the same conduct under § 1117(c), the Court declines to recommend that additional statutory damages under § 1117(d) be awarded.  *See Ringcentral, Inc. v. Quimby*, 711 F.Supp.2d 1048, 1065, n. 4 (N.D.Cal. April 8, 2010).

### 3.    Costs

Under the Lanham Act, a plaintiff that prevails on a claim under § 1125(a) is entitled to costs.  15 U.S.C. § 1117(a).  Plaintiff has prevailed on its false designation of origin claim under § 1125(a) and therefore is entitled to costs.  Plaintiff states that it has incurred costs in the amount of $700.00 consisting of the filing fee ($350.00) and the process server fees ($350.00).  *See* Gaffigan Decl. ¶18.

Under Civil Local Rule 54-3, an award of costs may include the clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred."  Therefore, Plaintiff's costs of $350.00 in filing fees and $350.00 for service, totaling $700.00, are allowable and should be awarded in full.

### 4.    Prejudgment Interest

Plaintiff requests prejudgment interest in its Motion.  The Court concludes that an award of prejudgment interest is appropriate in this case under 15 U.S.C. § 1117(b).  However, Plaintiff makes no argument in its Motion regarding the proper rate to be applied, or amount of interest to be awarded.  Nor is prejudgment interest included in the Plaintiff's proposed order, other than the following sentence:  "Award Plaintiff pre-judgment interest on judgment amount."

**United States District Court**
For the Northern District of California

1

## IV.    CONCLUSION

2      It is recommended that the Court GRANT the Motion.  Default judgment should be entered

3   against all Defendants on Plaintiff's trademark infringement and false designation of origin claims.

4   The Court should award $196,000.00 in statutory damages on the basis of Defendants' trademark

5   infringement, for which Defendants shall be jointly and severally liable.  The Court should also

6   award Plaintiff's costs, in the amount of $700.00.

7      A permanent injunction should be entered against Defendants as follows:

8      Defendants and their respective officers, agents, servants, employees and attorneys, and all
      persons in active concert and participation with them are hereby restrained and enjoined
9      from:

10         (a) manufacturing or causing to be manufactured, importing, advertising, or
            promoting, distributing, selling or offering to sell counterfeit and infringing goods
11         using the Chanel Marks;

12         (b) using the Chanel Marks in connection with the sale of any unauthorized goods;

13         (c) using any logo, and/or layout which may be calculated to falsely advertise the
            services or products of Defendants, brand-sunglasses.net, cheapbagsstore.com,
14         cocochaneloutlet.net, chanel-bag.org, chanel-store.net, chaneloutletstores.net,
            designerhandbagsoutlets.net, designer-handbags-outlet.com,
15         discount-handbags-outlet.com, chanelhandbagsoutlets.com,
            chanel-hangbags-store.com, chaneloutlets.net, chaneloutletsstores.net,
16         cocochaneloutlet.com, designerhandbags4u.net, ukdesignerhandbags.net,
            uschanel.com, and/or any other website or business, as being sponsored by,
17         authorized by, endorsed by, or in any way associated with Plaintiff;

18         (d) falsely representing themselves as being connected with Plaintiff, through
            sponsorship or association;
19
           (e) engaging in any act which is likely to falsely cause members of the trade and/or of
20         the purchasing public to believe any goods or services of Defendants,
            brand-sunglasses.net, cheapbagsstore.com, cocochaneloutlet.net, chanel-bag.org,
21         chanel-store.net, chaneloutletstores.net, designerhandbagsoutlets.net,
            designer-handbags-outlet.com, discount-handbags-outlet.com,
22         chanelhandbagsoutlets.com, chanel-hangbags-store.com, chaneloutlets.net,
            chaneloutletsstores.net, cocochaneloutlet.com, designerhandbags4u.net,
23         ukdesignerhandbags.net, uschanel.com, and/or any other website or business, are in
            any way endorsed by, approved by, and/or associated with Plaintiff;
24
           (f) using any reproduction, counterfeit, copy, or colorable imitation of the Chanel
25         Marks in connection with the publicity, promotion, sale, or advertising of any goods
            sold by Defendants, brand-sunglasses.net, cheapbagsstore.com, cocochaneloutlet.net,
26         chanel-bag.org, chanel-store.net, chaneloutletstores.net, designerhandbagsoutlets.net,
            designer-handbags-outlet.com, discount-handbags-outlet.com,
27         chanelhandbagsoutlets.com, chanel-hangbags-store.com, chaneloutlets.net,
            chaneloutletsstores.net, cocochaneloutlet.com, designerhandbags4u.net,
28         ukdesignerhandbags.net, uschanel.com, and/or any other website or business,

including, without limitation, handbags, wallets, belts, key chains, shoes, boots, jewelry, and/or watches;

(g) affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods by Defendants, brand-sunglasses.net, cheapbagsstore.com, cocochaneloutlet.net, chanel-bag.org, chanel-store.net, chaneloutletstores.net, designerhandbagsoutlets.net, designer-handbags-outlet.com, discount-handbags-outlet.com, chanelhandbagsoutlets.com, chanel-hangbags-store.com, chaneloutlets.net, chaneloutletsstores.net, cocochaneloutlet.com, designerhandbags4u.net, ukdesignerhandbags.net, uschanel.com, and/or any other website or business, as being those of Plaintiff or in any way endorsed by Plaintiff;

(h) offering such goods in commerce;

(i) otherwise unfairly competing with Plaintiff;

(j) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

Finally, the Court should further order as follows:

(k) In order to give practical effect to the Permanent Injunction, the domain names brand-sunglasses.net, cheapbagsstore.com, cocochaneloutlet.net, chanel-bag.org, chanel-store.net, chaneloutletstores.net, designerhandbagsoutlets.net, designer-handbags-outlet.com, discount-handbags-outlet.com, chanelhandbagsoutlets.com, chanel-hangbags-store.com, chaneloutlets.net, chaneloutletsstores.net, cocochaneloutlet.com, designerhandbags4u.net, ukdesignerhandbags.net, uschanel.com, are hereby ordered to be immediately transferred by Defendants, their assignees and/or successors in interest or title to Plaintiff's control. To the extent the current Registrars do not facilitate the transfer of the domain names to Plaintiff's control within ten (10) days of receipt of this judgment, the Registries and/or their agents shall, within thirty (30) days, transfer the domain names to a United States based Registrar of Plaintiff's choosing, and that Registrar shall transfer the domain names to Plaintiff; and

(l) Upon Plaintiff's request, the top level domain (TLD) Registries for the Subject Domain Names, within thirty (30) days of receipt of this Order shall place the Subject Domain Names on Registry Hold status, thus removing them from the TLD zone files maintained by the Registries which link the Subject Domain Names to the IP address where the associated websites are hosted.

//

//

//

//

//

//

(m) Upon Plaintiff's request, the Internet Corporation for Assigned Name and Numbers ("ICANN") shall take all actions necessary to ensure that the top level domain Registries responsible for the Subject Domain Names transfer and/or disable the following domain names:  brand-sunglasses.net, cheapbagsstore.com, cocochaneloutlet.net, chanel-bag.org, chanel-store.net, chaneloutletstores.net, designerhandbagsoutlets.net, designer-handbags-outlet.com, discount-handbags-outlet.com, chanelhandbagsoutlets.com, chanel-hangbags-store.com, chaneloutlets.net, chaneloutletsstores.net, cocochaneloutlet.com, designerhandbags4u.net, ukdesignerhandbags.net, uschanel.com

IT IS SO ORDERED.

Dated:  April 18, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge

**United States District Court**
For the Northern District of California

24